**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:13-CV-00355-MOC-DSC**

| | |
|---|---|
| **CATAWBA RIVERKEEPER FOUNDATION, INC.,** | |
| **Plaintiff,** | **MEMORANDUM AND RECOMMENDATION** |
| **v.** | |
| **DUKE ENERGY CAROLINAS, LLC,** | |
| **Defendant.** | |

**THIS MATTER** is before the Court on "Duke Energy Carolinas, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice," Doc. 11, filed August 1, 2013, and the parties' associated briefs and exhibits, Docs. 12, 16 and 19.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is a citizen suit brought by Plaintiff under the Clean Water Act ("CWA"), 33 U.S.C. § 1365, alleging unpermitted discharges of toxic metals and other pollutants from two coal ash ponds at Defendant's Riverbend Steam Station ("Riverbend").

The discharge of pollutants into waters of the United States is regulated under the National Pollutant Discharge Elimination System ("NPDES"). The Environmental Protection Agency ("EPA") administers the NPDES for each state. However, a state may apply for a transfer of permitting authority. Once that authority is transferred, the state has the primary responsibility for reviewing and approving NPDES discharge permits, albeit with continuing oversight by the EPA. Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 650 (2007). North Carolina is authorized to administer NPDES and does so through the North Carolina Department of Environment and Natural Resources, Division of Water Quality ("DENR").

Riverbend is located on the banks of Mountain Island Lake in Gaston County. It began commercial operations in 1929. Mountain Island Lake provides drinking water to over 750,000 people in the Charlotte region and is also popular for fishing and recreation. At its Riverbend facility, Defendant stores millions of tons of wet coal ash in unlined lagoons separated from the lake by earthen berms. The lagoons are the subject of a NPDES permit (the "Permit") allowing them to operate as wastewater treatment facilities. The NPDES permit for Riverbend was issued in January 2011, and is set to expire in February 2015.

Plaintiff is an independent nonprofit citizens' organization dedicated to protecting the Catawba/Wateree basin in North and South Carolina. They allege that Defendant's Riverbend berms have spilled streams of polluted water into the lake. They further allege that these polluted flows are not authorized by the Permit and are expressly prohibited by the CWA.

The CWA provides a mechanism for both private citizen and public agency enforcement. The Act authorizes citizen suits, providing that "any citizen may commence a civil action on his own behalf" "against any person ... who is alleged to be in violation of [ ] an effluent standard or

limitation." 33 U.S.C. § 1365(a)(1). Prior to the filing of a citizen suit, the CWA requires that notice of intent to sue be given to the EPA, DENR and the alleged polluter. 33 U.S.C. § 1365(b)(1)(A). The EPA and DENR are given sixty days from that notice to address the alleged violations. Id. On March 26, 2013, Plaintiff sent its' 60-Day Notice letter alleging specific violations of standards and limitations contained in the Permit and the CWA.

On May 24, 2013, based upon Plaintiff's 60-Day Notice letter, DENR filed its enforcement action against Defendant in Mecklenburg County Superior Court ("DENR action"). DENR alleged that Defendant illegally discharged polluted water through unpermitted outfalls and may have violated state groundwater standards at the so-called "compliance boundary" located 500 feet from the lagoons.

On June 11, 2013, Plaintiff brought this citizen suit claiming the DENR action fails to address violations contained in its 60-Day Notice letter. In its Complaint, Plaintiff alleges that:

> In the DENR action, DENR seeks to enforce certain state groundwater statutes and regulations and seeks to enforce the prohibition against unpermitted discharges in the form of the seeps and streams flowing from the Riverbend lagoons. However, the NPDES permit standard and limitation against allowing the entering of removed substances into the waters of North Carolina and navigable waters of the United States is an entirely separate and different standard and limitation and permit requirement….Further, in the DENR action, DENR alleges that [Defendant] has committed violations of law and its permit through its unpermitted discharges in the form of seeps and streams flowing from the lagoons. However, DENR does not allege that the transmission of pollutants from the Riverbend lagoons to Mountain Island Lake by way of hydrologically connected groundwater is an unpermitted discharge in violation of [Defendant's] NPDES permit.

Doc 1 at ¶¶ 23-24, 26.

On July 15, 2013, DENR published a proposed Consent Order that would completely resolve the DENR action. As part of that proposal, Plaintiff and any other members of the public had thirty days to comment on the proposed Consent Order. Plaintiff submitted comments on the

proposed Consent Order. On August 9, 2013, Plaintiff's Motion to Intervene as a matter of right in the DENR action was granted by Superior Court Judge Paul Ridgeway.

On August 1, 2013, Defendant filed its Motion to Dismiss. Doc. 11. The Motion has been fully briefed and is now ripe for review.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of a case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at

563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)). In other words, if after taking the complaint's well-pleaded factual

allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id.

## B. Diligent Prosecution

Citizens are precluded from bringing suit under the CWA "if the [federal government] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order [that the citizen alleges to have been violated]." 33 U.S.C. § 1365(b)(1)(B).

Courts engage in a two-part inquiry to determine whether a defendant may invoke the diligent prosecution bar pursuant to 33 U.S.C. § 1365(b)(1)(B). First, the court must determine whether a prosecution by the state (or the EPA) to enforce the same "standard, order, or limitation" was pending on the date that the citizen suit commenced. If so, the court must determine whether the prior pending action was being "diligently prosecuted" by the state at the time the citizen suit was filed. See Ohio Valley Envtl. Coal., Inc. v. Patriot Coal Corp., No. 3:11-0115, 2011 WL 6101921, at *5 (S.D.W.Va. Dec. 7, 2011) (citing Conn. Fund for Env't v. Contract Plating Co., 631 F.Supp. 1291, 1293 (D. Conn 1986) and 33 U.S.C. § 1365(b)(1)(B)).

The Supreme Court held that this "bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60 (1987) (internal quotation marks omitted). Citizen suits are proper only "if the Federal, State, and local agencies fail to exercise their enforcement responsibility." Id. Moreover, this "statutory bar is an exception to the jurisdiction granted in subsection (a) of § 1365, and jurisdiction is normally determined as of the time of the filing of a complaint." Chesapeake Bay Found. v. Am. Recovery Co., Inc., 769 F.2d 207, 208 (4th Cir. 1985); see also Friends of the

Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 890 F.Supp. 470, 486 (D.S.C.1995) ("Congress intended to prohibit citizen suits where the governmental enforcement agency is diligently prosecuting or has diligently prosecuted a judicial action to enforce the same alleged violations of a particular permit, standard, or limitation."); Conn. Fund for Env't, 631 F. Supp. at 1293 ("It appears to have been the intent of Congress to bar a citizens' suit whenever the same purpose could 'adequate[ly]' be achieved by a prior pending state suit regardless of whether the identical violations were asserted or the identical remedy was sought in the two actions."). As noted by one District Court, "the purpose underlying the 'diligent prosecution' provision [is] that a defendant not be subjected simultaneously to multiple suits, and potentially to conflicting court orders, to enforce the same statutory standard." Friends of the Earth, 890 F.Supp. at 485 (quoting Conn. Fund for Env't, 631 F.Supp. at 1293).

Citizen plaintiffs bear a heightened burden of proof. "Citizen-plaintiffs must meet a high standard to demonstrate that [a government agency] has failed to prosecute a violation diligently." Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md., 523 F.3d 453, 459 (4th Cir. 2008)("Piney Run II")(quoting Karr v. Hefner, 475 F.3d 1192, 1198 (10th Cir. 2007)). There is a presumption of diligence as to a concurrent government action addressing the standard or limitation at issue in a citizen suit. Id.

The Fourth Circuit has held that a prosecution is "diligent" where the action "is capable of requiring compliance with the Act and is in good faith calculated to do so." Id. The citizen suit provision "does not require government prosecution to be far-reaching or zealous. It requires only diligence." Id. (quoting Karr, 475 F.3d at 1197). A citizen plaintiff cannot overcome the presumption of diligence by merely showing that the agency's prosecution strategy is less aggressive than he would like or that it did not produce a completely satisfactory result. Id. A

governmental enforcement action will ordinarily be considered diligent so long as it "is capable of requiring compliance with the Act and is in good faith calculated to do so." Id. (quoting Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist., 382 F.3d 743, 760 (7th Cir.2004)). A citizen suit will not be permitted "[m]erely because the State may not be taking the precise action [the plaintiff] wants it to or moving with the alacrity [the plaintiff] desires." Friends of Milwaukee's Rivers, 382 F.3d at 761.

Nevertheless, if a federal court concludes that a state action does not meet this standard, it should not hesitate to allow a citizen suit to proceed. Ohio Valley Envt'l Coal., Inc. v. Hobet Mining, LLC, 723 F.Supp.2d 886, 907 (S.D.W.Va. 2010)("Hobet II").

"In reviewing diligence, a federal court may rely on evidence from the state court docket to determine the prospects that the state suit would proceed expeditiously to a final resolution." Id. The court must also consider the context surrounding the state prosecution. Id. The fact that the state and defendant enter into a consent decree with a schedule of compliance does not show a lack of diligence. Piney Run II, 523 F.3d at 459. To the contrary, courts grant deference where violations are settled pursuant to such a decree, so as to avoid interpreting the citizen suit provisions in a way that "'would undermine [the government's] ability to reach voluntary settlements with defendants.'" Id. (quoting Karr, 475 F.3d at 1198); Ark. Wildlife Fed'n v. CI Americas, Inc., 29 F.3d 376, 380 (8th Cir. 1994) ("It would be unreasonable and inappropriate to find failure to diligently prosecute simply because [the defendant] prevailed in some fashion or because a compromise was reached.").

**C. The DENR Action Against Defendant is a Diligent Prosecution**

There is no dispute that the DENR action was pending at the time Plaintiff filed this lawsuit. Defendant argues that DENR is diligently prosecuting Plaintiff's claims, and

accordingly, this Court lacks jurisdiction. Plaintiff contends that the DENR action fails to address discharges from the Riverbend coal ash ponds to groundwater that may connect to waters of North Carolina and the United States.

The undersigned is persuaded by Defendant's argument that the threshold for diligent prosecution has been met. North Carolina regulates its groundwater through implementation and enforcement of its groundwater rules, which are incorporated into Riverbend's NPDES permit. Doc. 1 at ¶ 25 ("The groundwater statutes and regulations of North Carolina, which are alleged in the DENR action, govern generally the contamination of groundwater in North Carolina."); 15A N.C. Admin. Code 2L.0101(a) (groundwater rules "establish a series of classifications and water quality standards applicable to the groundwaters of the State"); Riverbend Permit at Section A.(11.) ("The permittee shall conduct groundwater monitoring to determine the compliance of this NPDES permitted facility with the current groundwater Standards found under 15A NCAC 2L .0200.").

The DENR action alleges that Defendant has potentially violated these groundwater rules as a result of certain exceedances. Doc. 12, Ex. 6 at ¶¶ 12-26, 60-63. The DENR action further alleges that Defendant's "potential violations of the groundwater standards, without assessing the problem and taking corrective action, poses [sic] a serious danger to the health, safety and welfare of the people of the State of North Carolina and serious harm to the water resources of the State." Id. at ¶ 67. DENR seeks a "mandatory injunction requiring [Defendant] to abate [any] violations of … groundwater standards" at Riverbend. Id. at Prayer for Relief, ¶¶ 2-3.

Though the DENR action may not reflect Plaintiff's preferred approach to address groundwater issues at or around the Riverbend plant, DENR has substantial discretion in

managing its groundwater program and enforcing its requirements. See, e.g., Piney Run II, 523 F.3d at 459.

The proposed Consent Order requires Defendant to evaluate groundwater constituents detected at or beyond the compliance boundary that exceed the standards found in 15A N.C. Admin. Code 2L.0202 to determine whether any of those exceedances are naturally occurring, including (1) a statistical evaluation of analytical results in support of assessment determinations; (2) a comparison of constituents of concern to naturally occurring constituents; (3) development and refinement of a groundwater conceptual model that describes groundwater chemistry and flow systems including incorporation of seeps related to groundwater discharge; and (4) continued evaluation of well location, construction and development. For those groundwater constituents detected at or beyond the compliance boundary that exceed the groundwater standards, and are determined not to be naturally occurring, Defendant must prepare a report that assesses the cause, significance and extent of each groundwater exceedance, including (1) the source and cause of exceedances; (2) any imminent hazards to public health and safety and actions taken to mitigate them in accordance with paragraph (f) of 15A N.C. Admin. Code 2L.0106; (3) all receptors and significant exposure pathways; (4) the horizontal and vertical extent of soil and groundwater exceedances and all significant factors affecting contaminant transport; and (5) geological and hydrogeological features influencing the movement, chemical, and physical character of the compounds showing exceedances. Furthermore, the proposed Consent Order requires water quality sampling of any public or private water supply wells that have the potential to be impacted by coal ash constituents as selected by DENR. Defendant must collect water samples sufficient to determine compliance with water quality standards for any areas where the groundwater compliance boundary extends to, into or beyond a surface water

feature such as a stream or lake. See DENR Compl. at Ex. 8, ¶¶ 1-2, 4, 8. These stringent requirements are designed to address any alleged contamination to groundwater from the Riverbend plant, including the possibility that such groundwater may migrate through hydrologic channels and affect public health. Doc. 12, Ex. 9, proposed Consent Order ¶¶ 20, 51-66.

The parties have agreed to an expedited schedule for completion of this evaluation, which will be undertaken with DENR oversight. Id. The proposed Consent Order provides for payment of a civil penalty in the amount of $36,000 and $2,911.48 in expenses. It also provides for stipulated penalties of $1,000 per day for first 30 days, and $5,000 per day thereafter for each violation of paragraphs 32-66 of the proposed Consent Order. The proposed Consent Order also requires Defendant to submit a closure plan for the Riverbend coal ash ponds at least twelve months before closing the plant. Id. at ¶ 66.

Plaintiff has been allowed to intervene in the DENR action. A proposed Consent Order has been submitted for public comment. The undersigned concludes that the DENR action represents a substantial, considered and ongoing response to the violations noted in Plaintiff's 60-Day Notice letter, and that the DENR action constitutes diligent prosecution.

In light of diligent prosecution by the State, the undersigned concludes that this citizens suit brought by Plaintiff is barred by 33 U.S.C. § 1365(b)(1)(B).

## IV. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Duke Energy Carolinas, LLC's Motion to Dismiss Plaintiff's Complaint with Prejudice," Doc. 11, be GRANTED.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Max O. Cogburn, Jr.

**SO RECOMMENDED**.

Signed: December 4, 2013

David S. Cayer
United States Magistrate Judge